UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO


HUMAN RIGHTS DEFENSE CENTER,

    Plaintiff,


vs.                                                     Case No. 18 CV 00355 JAP/SCY


BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF SAN MIGUEL, NM,
MATT ELWELL, Warden, individually and in his
official capacity,
ANTONIO PADILLA, Deputy Warden,
individually and in his official capacity,
JOHN AND JANE DOES 1-10, Staff,
individually and in their official capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS

        In the MOTION TO DISMISS IN LIEU OF AN ANSWER (Doc. No. 25), Defendants the Board of County Commissioners of the County of San Miguel, New Mexico (County), and the individual Defendants, Matt Elwell (Warden Elwell) and Antonio Padilla (Deputy Warden Padilla) (together, Defendants) ask the Court to dismiss all claims for injunctive relief, declaratory relief, and damages under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff, Human Rights Defense Center (Plaintiff) alleges that Defendants violated Plaintiff's First and Fourteenth Amendment rights by rejecting publications that Plaintiff sent to inmates at the San Miguel County Detention Center (Jail). The Motion is fully briefed. *See* PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS IN LIEU OF AN ANSWER (Doc. No. 28) (Response); and DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

IN LIEU OF AN ANSWER (Doc. No. 31) (Reply). Defendants argue that Plaintiff's claims for injunctive and declaratory relief are moot because the Jail has a constitutional mail policy that allows the delivery of Plaintiff's publications to inmates and the Jail has now remedied the misapplication of that policy through retraining of all staff. The Court agrees and will dismiss the claims for injunctive and declaratory relief. The individual Defendants contend that all claims for damages should be dismissed for failure to allege what actions each individual Defendant took in violation of Plaintiff's rights. The Court will grant the Motion on that basis but will allow Plaintiff an opportunity to seek leave to amend the Amended Complaint. The Court will dismiss all claims against the individual Defendants in their official capacities because those claims are duplicative of the claims against the County. The Court will also deny PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT (Doc. No. 2) (Motion for Preliminary Injunction).[1]

I.      STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), Defendants move for dismissal of all claims for injunctive and declaratory relief because those claims are moot. In ruling on a motion under Rule 12(b)(1), a court has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts. *Pringle v. United States,* 208 F.3d 1220, 1222 (10th Cir. 2000). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. *Id.* "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery*

---

[1] In ruling on the Motion, the Court has considered the Declaration of Paul Wright (Doc. No. 2-1) (Wright Decl.) attached as Exhibit A to the Motion for Preliminary Injunction, and the Court has considered the BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SAN MIGUEL, NM'S REPONSE TO HRDC'S PETITION FOR PRELIMINARY INJUNCTION (Doc. No. 26) (adopting arguments from Motion to Dismiss); and PLAINTIFF'S REPLY TO DEFENDANT COUNTY'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 29).

*Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (citations omitted). Defendants' argument that they have remedied the alleged violations of Plaintiff's rights implicates the mootness doctrine's "voluntary cessation" exception. *Id.* at 1115. Voluntary actions may moot litigation if: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (citation omitted). When a party asserts that its own conduct has eliminated any live case or controversy, it bears a "heavy burden" to show that the change in circumstances makes it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000).

Under Fed. R. Civ. P. 12(b)(6), Warden Elwell and Deputy Warden Padilla ask for dismissal of all of Plaintiff's claims for damages asserting qualified immunity. Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), "[a court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2014). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Thomas v. Kaven*, 765 F.3d 1183, 1190–91 (10th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When a defendant raises qualified immunity in a motion to dismiss, a court must determine whether the plaintiff's allegations, viewed in the light most favorable to the plaintiff, are adequate to show that (1) a defendant's conduct violated a constitutional or statutory right, and (2) the right was clearly established when the violation occurred. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011). This requires a court to decide whether the plaintiff has sufficiently alleged what acts were committed by which defendant. *Matthews v. Bergdorf*, 889

F.3d 1136, 1144 (10th Cir. 2018). Warden Elwell and Deputy Warden Padilla argue that Plaintiff has failed to state a claim that they personally participated in the violation of Plaintiff's constitutional rights.

II.     BACKGROUND

Plaintiff's executive director, Paul Wright, states that Plaintiff is a non-profit organization dedicated to educating prisoners and the public about "the economic and social costs of prison to society." (Mot. for Prelim. Injunct. Ex. A, Wright Decl. ¶ 2.) Plaintiff accomplishes its mission "through advocacy, litigation, and the publication and/or distribution of books, magazines, and other information concerning prisons and prisoner rights." (*Id.*) Plaintiff

> publishes and distributes a soft-cover monthly magazine titled *Prison Legal News: Dedicated to Protecting Human Rights*, which contains news and analysis about prisons, jails and other detention facilities, prisoners' rights, court opinions, management of prison facilities, prison conditions, and other matters pertaining to the rights and/or interests of incarcerated individuals.

(*Id.* ¶ 4.) More recently, Plaintiff "began publishing a second monthly magazine, *Criminal Legal News*[, which] … focuses on review and analysis of individual rights, court rulings, and news concerning criminal justice-related issues." (*Id.* ¶ 5.) Plaintiff "also distributes approximately 50 different soft-cover books on subjects of interest to prisoners and others[.] …[Plaintiff] is the publisher and/or book distributor for these books." (*Id.* ¶ 6.)

In the AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE CIVIL RIGHTS ACT 42 U.S.C. § 1983 AND DAMAGES (Doc. No. 7) (Amended Complaint) Plaintiff alleges that over the last two years Plaintiff sent several publications to inmates at the Jail, but nineteen books were returned to Plaintiff in their original packaging marked "Refused." (Am. Compl. ¶ 24.) In addition, sixteen copies of *Prison Legal*

4

*News* and five copies of *Criminal Legal News* were returned to Plaintiff. (*Id.*) Plaintiff alleges that Defendants rejected the publications without notice or a hearing. (*Id.* ¶¶ 25–26.)

In Count I, Plaintiff asserts a claim under 42 U.S.C. § 1983 for violations of Plaintiff's First Amendment right to communicate with inmates at the Jail. (*Id.* ¶ 39.) In Count II, Plaintiff asserts a claim under 42 U.S.C. § 1983 for denying Plaintiff's due process rights by failing to notify and inform Plaintiff of its right to appeal each rejection. (*Id.* ¶¶ 47–49.) Plaintiff seeks declaratory and injunctive relief as well as nominal, compensatory, and punitive damages, attorneys' fees and costs. (*Id.* ¶¶ 53–58.)

III. DISCUSSION

    A.    Plaintiff's claims for injunctive and declaratory relief are moot and will be dismissed.

Defendants assert that Plaintiff's claims for injunctive and declaratory relief have become moot because (1) the Jail's policy regarding receipt of publications directly from publishers allows inmates at the Jail to receive Plaintiff's publications; (2) the rejection of Plaintiff's publications was a violation of that policy; and (3) upon learning of the violation, Defendants retrained all staff on the proper application of the policy. In his affidavit, Warden Elwell specifies that the Jail's "Inmate Correspondence" policy was drafted and enacted prior to his tenure as Warden, which began on September 18, 2017. (Mot. Ex. A, Elwell Aff. ¶ 5.) Until this lawsuit was filed on April 16, 2018, Warden Elwell "was unaware that its application with respect to publications (such as those referenced in Plaintiff's Complaint) was not being applied consistently." (*Id.*) Warden Elwell "was unaware that staff may have been either discarding or returning inmate publication shipments[.]" (*Id.* ¶ 6.) Warden Elwell was also not aware "that the sender of those publications was not being given the opportunity to grieve these rejections as was (and still is) provided by the policy." (*Id.*) Upon learning of the policy violations, Warden Elwell

5

immediately spoke with Jail staff and "reviewed the relevant policy to make sure that it adequately addressed and ensured inmate receipt of Plaintiff's publications[.]" (*Id.* ¶ 8.) In addition to annual training in April 2018, Warden Elwell "conducted a refresher training directed specifically at the relevant policy and subject of inmate correspondence" in June and July 2018. (*Id.* ¶ 10.) The Jail's "Inmate Correspondence" policy is attached as Exhibit A to Warden Elwell's affidavit, and copies of the training rosters from June and July 2018 are attached as Exhibit B to Warden Elwell's affidavit. (*Id.* ¶ 9.)

According to Warden Elwell, the "retraining of staff as to the proper application of the policy alleviates the issues discussed in the Plaintiff's Complaint." (*Id.* ¶ 11.) In the future, Warden Elwell "has no intention of amending" the Jail's policy to make it more restrictive on receipt of Plaintiff's publications. (*Id.* ¶ 12.) Warden Elwell is "committed to continuing [the] current policy of allowing publications to be mailed into the facility directly from the publisher." (*Id.* ¶ 14.)

The Inmate Correspondence policy requires that "[a]ll incoming inmate mail, including packages and publications, shall be given to the Correspondence Officer for proper processing and distribution." (Elwell Aff. Ex. A, VI D.1.) The Correspondence Officer must "[s]earch the contents of mail for contraband" and for threatening content. (*Id.* VI.E.2.a.–d.) "No correspondence will be rejected solely because it contains religious, philosophical, or political views, or views critical of the facility, staff, or conditions of confinement." (*Id.* VI.F.3.) "Inmates are allowed to receive publications directly from the publisher, distributor, or book club." (*Id.* VI.J.1.–2.)

The Correspondence Officer must "log all rejected … publications, and … notify the inmate using the Correspondence Denial Form." (*Id.* VI.E.2.e.) "Inmates may grieve the

6

rejection of incoming mail by using Detention Center's Inmate Grievance Procedure." (*Id.* VI.E.2.f.) The inmate must be notified of any rejection of a publication, and the inmate must be notified that the inmate "may appeal the decision using the established facility's Inmate Grievance Procedure." (*Id.* VI.K.1.b.) Upon rejection of a publication, the Jail must also "provide the sender of the publication with written notice using the Correspondence Denial Form, which shall include: 1) The specific item rejected; 2) The date of the rejection; 3) The name of the inmate to whom the publication was mailed; 4) A description of the reason(s) for rejection; and 5) The page number(s) containing objectionable material." (*Id.* VI.K.2.a.) Jail personnel must "advise the sender (sic) the right to appeal the disapproval or rejection of the publication. Such appeal shall go directly to the Detention Administrator." (*Id.* VI.K.2.b.) "The sender may appeal the disapproval or rejection of the publication within fifteen (15) calendar days from the date the notice was mailed by the facility." (*Id.* VI.K.2.c.)

Since November 2006, Erlinda Romero (Romero), has been primarily responsible "for sorting, inspecting and distributing inmate correspondence" at the Jail. (Mot. Ex. B, Romero Aff. ¶¶ 2–3.) However, while performing her duties, Romero "was unaware that it was inconsistent with policy to discard or return inmate publication shipments … even when the inmates would throw them away or refuse to accept them." (*Id.* ¶ 4.) When this lawsuit was filed, Romero, "along with all other staff, were immediately retrained on the inmate correspondence policy." (*Id.* ¶ 5.) Romero "now ha[s] a thorough understanding of our inmate correspondence policy and how it applies to all types of correspondence and [Romero is] following the direction of Warden Elwell to strictly adhere to the policy and apply the knowledge gained from [her] training." (*Id.* ¶ 6.) Romero states that she will ensure "inmate receipt of Plaintiff's and other like publications (subject to safety restrictions)." (*Id.*) In the future, Romero will "only apply

7

book/correspondence restrictions by following existing policy (directed towards the safety and security of the detainees, staff, and facility)." (*Id.* ¶ 7.)[2]

Defendants assert that because the Jail has a constitutional mail policy and has retrained all staff to follow that policy, Plaintiff's claims for declaratory and injunctive relief have become moot. According to Defendants, because they have remedied any misapplication of the Jail's inmate correspondence policy, "there is no point in ordering an action that has already taken place." (Mot. at 5 citing *Rio Grande Silvery Minnow*, 601 F.3d at 1117.)

Plaintiff asserts that even if Defendants' staff retraining may have mooted their claims for injunctive relief, the Court should not dismiss Plaintiff's claims for declaratory judgment that the Jail's past censorship was unconstitutional. As the Tenth Circuit explained, a "claim for declaratory relief is not moot where the district court must determine whether a past constitutional violation occurred which will in turn affect the parties' current rights or future behavior." *Lippolt v. Cole*, 468, F.3d 1204, 1217 (10th Cir. 2006). The Court concludes that despite past violations, a declaratory judgment of past violations would have no practical effect on the future behavior of the Defendants toward the Plaintiff. *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) ("in a mootness inquiry in the declaratory judgment context, it is critically important to determine whether … defendants, individuals or entities … are actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights."). Therefore, Plaintiff's claims for declaratory and injunctive relief will be dismissed as moot.

---

[2] The Court notes that instead of maintaining an unconstitutional mail policy as alleged in the Amended Complaint, it appears that Defendants and the Jail staff were unaware of and inadvertently in violation of the Jail's policy.

8

B.  Plaintiff's claims for damages against individual Defendants will be dismissed without prejudice.

Plaintiff alleges that "Defendants' mail policies and practices unconstitutionally prohibit delivery of Plaintiff's books to prisoners housed in the San Miguel County Detention Center[.]" (Am. Compl. ¶ 1.) Plaintiff alleges that "Defendant Matt Elwell, [as] the Warden of the Jail … has ultimate responsibility for the promulgation and enforcement of all Jail staff policies and procedures and is responsible for the overall management of the Jail, to include processing of mail." (*Id.* ¶ 11.) Similarly, Plaintiff alleges that "Defendant Antonio Padilla, is the Deputy Warden of the Jail. Defendant Padilla is employed by and is an agent to Defendant County, and on information and belief he is personally involved in the adoption and/or implementation of the mail policies at issue, as well as overseeing and coordinating the mail policies and practices at the Jail." (*Id.* ¶ 12.) Plaintiff alleges that "Defendants, and other agents of the Jail, are responsible for or personally participated in creating, implementing these unconstitutional policies, practices, and customs, or for ratifying or adopting them. Further, Defendants are responsible for training and supervising the staff persons whose conduct has injured … [Plaintiff]." (*Id.* ¶ 34.) In Count I, Plaintiff alleges that "[t]he conduct of Defendants was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others." (*Id.* ¶ 41.) In Count II, Plaintiff alleges that "Defendants' policy and practice fail to provide [Plaintiff] and other senders with adequate notice and an opportunity to be heard." (*Id.* ¶ 48.) "The conduct of Defendants was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others." (*Id.* ¶ 49.)

Warden Elwell and Deputy Warden Padilla argue that Plaintiff's general allegations against "Defendants" fail to state a claim that they personally participated in the alleged

9

violations. They further argue that Plaintiff fails to allege each of them engaged in deliberate, intentional action aimed at violating Plaintiff's rights. According to Warden Elwell and Deputy Warden Padilla, the Tenth Circuit holds that these types of generalized allegations do not support individual capacity claims. Plaintiff argues it has sufficiently alleged that each individual Defendant has the responsibility to enforce the Jail's policies and procedures, including processing of the mail. Plaintiff asserts that these individual Defendants are charged with that responsibility under New Mexico law. *See* NMSA 1978 § 33-3-1(A) ("The common jails shall be under the control of the respective sheriffs, independent contractors or jail administrators hired by the board of county commissioners or other local public body[.]").

"In conducting a qualified immunity analysis, … courts must consider … whether each defendant's alleged conduct violated the plaintiff's clearly established rights….The complaint must isolate the allegedly unconstitutional acts of each defendant; otherwise the complaint does not provide adequate notice as to the nature of the claims against each and fails for this reason." *Matthews v. Bergdorf*, 889 F.3d at 1144. To overcome a qualified immunity defense, plaintiffs "must establish that each defendant ... [violated] plaintiffs' clearly established constitutional rights.... Plaintiffs must do more than show ... that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations." *Id.* at 1145 (citing *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). In *Dodds v. Richardson*, the Tenth Circuit held that a plaintiff may establish individual liability of a supervisor for a constitutional violation under § 1983 by demonstrating: "(1) the defendant promulgated, created, implemented or possessed personal responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional violation." 614 F.3d 1185, 1199 (10th Cir. 2010).

The allegations against Warden Elwell and Deputy Warden Padilla are sufficient to meet the first two elements of the supervisory liability test in *Dodds*. Plaintiff alleges that Warden Elwell and Deputy Warden Padilla were responsible for ensuring that Jail staff properly delivered all publications sent by publishers and that their failure to do so caused constitutional harm. *Dodds*, 614 F.3d at 1185. *See also Wilson v. Montano*, 715 F.3d 847, 857–58 (10th Cir. 2013) (finding that even though plaintiff alleged no direct contact with warden, or that warden knew of plaintiff's specific circumstances, warden is still liable for maintaining a policy of holding individuals without pending criminal charges and without a prompt probable cause determination).

As for the third element, Plaintiff has failed to allege facts supporting each individual Defendant's state of mind. Plaintiff alleges that "[t]he conduct of Defendants was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others." In the affidavits filed with Defendants' Motion, the Court learned that after Warden Elwell assumed his position on September 18, 2017, he reviewed and reissued the Jail's policy on Inmate Correspondence on November 6, 2017. (Mot. Ex. A, Elwell Aff. ¶ 9.) However, Warden Elwell was unaware that staff may have been either discarding or returning inmate publication shipments and that the sender was not being given the opportunity to grieve these rejections. (*Id.* ¶ 6.) Hence, Warden Elwell admits to knowing the policy but not to knowing that it was being violated. When Warden Elwell became aware that the policy was not being followed, he "conducted refresher training directed specifically at the relevant policy and subject of inmate correspondence." (*Id.* ¶ 10.) According to Warden Elwell's affidavit, he reissued the policy in November 2017, he conducted yearly training of staff in April

11

2018, and he retrained staff in June and July 2018 on the policy after realizing, through the filing of this case, that staff members were not following the policy.

In the context of this Motion, however, it is improper for the Court to consider the affidavits from Warden Elwell and from Romero without converting the Motion into a summary judgment motion. The Court sees no reason to do so. Viewing the allegations in the Amended Complaint that allege Defendants collectively violated Plaintiff's rights, the Court has no basis to infer that each individual Defendant knew that the Jail's policy was not being followed and knowingly allowed that failure to continue with deliberate indifference to the constitutional violations. *See Jones v. Salt Lake Cty.*, 503 F.3d 1147, 1163 (10th Cir. 2007) (citing *Jojola v. Chavez,* 55 F.3d 488, 490 (10th Cir.1995)) ("Liability under § 1983 must be predicated upon a *deliberate* deprivation of constitutional rights by the defendant, and not on negligence."). Therefore, the Court concludes that Plaintiff has failed to state a claim against Warden Elwell and Deputy Warden Padilla as supervisors over Romero and other Jail personnel.

Plaintiff asks the Court to grant it "leave to amend with the necessary specificity could be added to the complaint." (Resp. at 7.) In light of the Court's determination not to consider the evidence in Warden Elwell's and Ms. Romero's affidavits, the Court will allow Plaintiff to file a motion to amend with a proposed second amended complaint that clarifies "who did what to whom" including allegations supporting the required intent. *Amaro v. New Mexico*, --- F. App'x ---, 2018 WL 2986635, * 3 (D. N.M. June 13, 2018) (unpublished) (reversing district court's grant of motion to dismiss without providing pro se plaintiff an opportunity to amend a complaint alleging that unidentified jail personnel knowingly allowed prisoners to be exposed to carbon monoxide).

      C.      Plaintiff's official capacity claims are duplicative of the claims against the County and will be dismissed.

Defendants argue that "[a]n action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." (Mot. at 17, citing *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).) If a governmental entity is already a defendant in a lawsuit, then any official capacity claims against its employees are redundant and may be dismissed. *See Stump v. Gates*, 777 F.Supp. 808, 816 n.3 (D. Colo. 1991) *aff'd* 986 F.2d 1429 (10th Cir. 1993) (stating, "…a § 1983 action appropriately is pleaded against a municipality either by naming the municipality itself or by naming the municipal official in his or her official capacity. Naming either is sufficient. Naming both is redundant.") (citations omitted).

Plaintiff contends that the Court should not dismiss these claims because it has discretion to allow multiple official capacity claims where doing so would be in the public interest. (Resp. at 9, citing *Chase v. City of Portsmouth*, 428 F. Supp. 2d 487, 490 (E.D. Va. 2006) (holding that despite naming the City as a defendant, the official capacity claims against four city council officials, who voted to deny plaintiff's Use Permit in violation of federal Religious Land Use and Institutionalized Persons Act of 2000, should not be dismissed because injunctive relief against the officials will "provide a certain level of accountability."). The Court does not believe that political accountability is an issue in this case. Therefore, the Court will dismiss all claims against Warden Elwell and Deputy Warden Padilla in their official capacities because those claims are duplicative of the claims against the County.

IT IS ORDERED that MOTION TO DISMISS IN LIEU OF AN ANSWER (Doc. No. 25) is granted as follows:

      1.      All claims for declaratory and injunctive relief are dismissed.

2. All claims for damages against Warden Elwell and Deputy Warden Padilla in their individual capacities are dismissed without prejudice, and by September 5, 2018 Plaintiff may file a motion to amend the Amended Complaint with a proposed Second Amended Complaint.

3. All claims against Warden Elwell and Deputy Warden Padilla in their official capacities are dismissed.

4. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT (Doc. No. 2) is denied.

/s/ James A. Parker<br>
SENIOR UNITED STATES DISTRICT JUDGE